First case that we're going to be hearing is Cristallex v. Bolivarian Republic of Venezuela. Appellate numbers 21-1276, 21-1277 and 21-1289. Good morning, counsel. May we have your appearance, please? Good morning, Your Honor. I'm Don Verrilli for the Venezuelan parties. And may it please the court, I'd like to reserve three minutes for rebuttal, please. That'll be granted. As you and your colleagues know, the court is very interested in appellate jurisdiction. And so we'd ask that you focus on that subject. If me and my colleagues have questions outside of that, and there are many topics you raised in your respective briefing, we'll mention, we'll ask you about those. But we really are interested in our authority to even act here. Okay. Yes, Your Honor. I will focus on appellate jurisdiction. I will focus principally on appellate jurisdiction over the denial of the Rule 69 motion to quash. I'm happy to answer questions about the sale process order as well. Thank you. I'd like to, if I could, to start by summarizing the three reasons why that denial of the motion to quash is a final appealable order. First, this case is different in a crucial way from the normal case in which questions about appealability of writs of attachment arise. This entire case is a post-judgment action. The question isn't whether these assets should be preserved pending resolution of another legal dispute. The lawfulness of the attachment is the whole ballgame here. And second, we meet the practical finality test of sharp properties because the Rule 69 order definitively established liabilities that were previously only provisional. In Delaware, one serves a writ of attachment first and then adjudicates its lawfulness in a subsequent motion to quash proceeding. That's exactly what Judge Stark said should happen in the case. That's at page 250 of the Joint Appendix. It's exactly what we did here. We raised our substantive objections to the attachment in the motion to quash and the denial of that motion was the final decision on the lawfulness of the attachment. It was the final decision with respect to that issue. But don't final judgments all still have the requirement that there be, quote, nothing left to do but execute? And here we know, because you've all been very busy in the district court, there's lots to be done before an execution can occur. That gets to my third point, Your Honor. I think it is the case that there is nothing left to do but execute here. It's just the process, the how of the execution is complicated because this is a massive asset at stake and there are foreign sovereign interests at stake and it's a complicated process. But that's all about the how. It's not about the whether that the execution, the substance is final. And I think this goes to the third point I wanted to make, which is that the prudential considerations, I think, weigh overwhelmingly in favor of review now. And that's true for three reasons. One is this enormously complicated procedure that's going forward in the district court now, with all of the fighting over the OFAC regulations and everything else, would be totally unnecessary if we are correct on our rules. So as you're as you're doing that, how does our entering into this fray at this stage of the case promote any finality? So it does in three ways, Your Honor, that it does in two ways. And then there's a third consideration that matters. The first is the way I just started to describe. If the court agrees with us on the merits that these assets could not lawfully be attached because Delaware law required proof of fraud and Crystal X failed to prove fraud, then there should be no execution proceedings. There should be no proceedings in the district court about the sale order. So it certainly promotes finality there. It's another way in which it affects the interest at stake very importantly. And it's this, and it's that if the court waits until the wholesale process goes through and there's an actual sale order before deciding whether these assets could be lawfully sold in the first place, there's going to be a cloud over that proceeding, which is going to depress the price. Well, isn't there? I mean, there's a big OFAC's cloud over this proceeding, no matter what we do. Well, that's certainly true, Your Honor. But again, I think that actually, as a practical and prudential matter, weighs in favor of acting now. The OFAC has said it's not going to revisit this until a few months from now. There's time to decide the issue on the merits. And the resolution on the merits is, seems to us, does advance judicial economy in the ways I described. And then I think the other thing that's important to consider is the alternative scenario here, which is that if one waits to decide this legal issue until the very end, after there's an auction and an order of sale, then it's going to come up in one of two ways, both of which seem to me to be terribly unsatisfactory, especially as compared to considering the issue now. First, it's either going to be a mad scramble and an emergency stay proceeding, which is what my friends on the other side say is what should happen here. Or second, the sale will go through. There won't be a stay. The sale will go through. There'll be an appeal. And the court will have to confront the possibility of unwinding the sale if we're correct on this issue. And it seems to me that's true of any case that has a remedy that is complicated to arrive at. And one party would prefer to get a resolution if we even need to reach a remedy. Like, I'm not sure how this is different than any other complicated case for which we're trying to deal with a remedy that you know is complex to achieve. This is about execution, which respectfully I think is different than a remedy. A remedy is part of the, you have liability and damages. You know, you have. I understand that. And that's different from this situation. And I think actually a better analogy, if I could, and I apologize on this, it's not in our briefs, but it does seem to me a reflection that it's a quite helpful analogy. And it's to the antitrust laws. If there's a merger and that merger is challenged and the court concludes that the merger was unlawful and the asset needs to be divested, what the Supreme Court said in Brown-Schuh was that is a final order, even though there hasn't been a divestiture proceeding yet. And it seems to me, while it's not exactly the same as this, it's very close. And the two reasons that the Supreme Court gave in Brown-Schuh are exactly the reasons that apply here. One is that the cloud of uncertainty about the lawfulness of the underlying order that precedes the divestiture cast a cloud over the divestiture proceedings and lower the price of the asset being auctioned off. And that's unsatisfactory. And, two, the whole thing would be unnecessary if the divestiture turned out to be unlawful. And I do think that that's just really. Let me ask you this question. You've raised, you've asked us to take this as a final order. You said that we could, you've argued we could take it under the collateral order doctrine. Why didn't you seek a 1292 certification from the district court? Well, I think the reason was that we think that the issue here is clearly a final order under the practical finality. But I'm asking you in the alternative. Or in the alternative that you could reach it under the collateral order doctrine, that those are, you know, those are, it seems to me, really solid bases for jurisdiction. I suppose we could go back and do that at this point. You have not done that? No, we have not. OK, I just want to be clear. We have not done that. OK. Can I just ask you on the collateral order doctrine, your adversary takes a view about whether that was sufficiently developed because it was only raised in a footnote. And I'm talking about as it relates to the quash order. What is your response to that? Well, I think that we did argue collateral order with respect to the sale process order. So the, I think the criteria are well established. And I do think, I mean, our primary argument here is that this is a final order in all the ways I described. The collateral order is a fallback here, but it does seem to, and so we do think that this is well within the practical finality principle of sharp properties. And therefore, that we only need collateral order as a fallback with respect to that issue. But I do, and I do think if I could on that issue, a couple of points is that, you know, my friend on the other side's basic position here is that the denial of motion of quash is never subject to appeal as a final order. And cite some 19th century cases boiled over for that proposition. And I just want to address that if I could, because I do think that's the centerpiece of their position here. First, I think that if one looks at those cases, I have trouble even understanding them. They're, you know, 19th century formalistic cases. They do seem to me, Boyle and Loper, to be different in the following way. In Boyle, the challenger was not actually attacking the writ of attachment, but was attacking another order that provided for the procedures for the sale of the writ of attachment, of the attached assets. And what the, as I read the opinion, what the court said, had you attacked, if you had a legal basis for attacking the writ of attachment, that would have been a final order. And with respect to Loper, the court was saying something, I think, there that, yeah, you attacked the writ of attachment, but you really weren't attacking the lawfulness of the attachment. You were attacking the lawfulness of the underlying judgment that supported the attachment, and that you can't do. That's just like a rehearing, you're trying to do what you do in a rehearing petition. Now, the Supreme Court, obviously, also in Gillespie, has moved a very great distance away from the kind of thinking behind those cases. And I do think that this court's sharp properties decision about practical finality for final orders, sharp properties couldn't be right if that, if they're right about that. Yeah. Let's say we're working with, under the practical guidelines, you have made objections to the special master's proposals. If the district court rejects your objections, do you anticipate you'll want to appeal that ruling? So, I think if the court were to disagree with us about the application of the collateral order doctrine with respect to the sale process order now, then I think, while I can't make a definitive statement about that, I think it's reasonable to anticipate that we might, well, it would depend on what the court did, of course. But it seems to me possible that that could happen with respect to that order, yes. So, following up on what Judge Porter was saying, then the sales order, we'll focus now on the sales process order, that is not unreviewable at a later time. In fact, it could be, you could seek review at a later time, for example, post-objections, rulings on the objections to the special master. And I guess, to be more clear, how is that unreviewable later, the sales process order? So, I think a couple things about that, just to clarify. I think the issue around the appealability of the sales process order has gotten more complicated since Judge Stark's initial decision. We read the initial decision as deciding more than maybe it did decide, given the subsequent proceedings. But even with that caveat, the problem is that the harms to us are harms that can't be remedied at the end stage. If we're right, that the OFAC regulations preclude this process from going forward at all, and if we're right, and the United States government is right, that foreign policy interests of the United States are going to be harmed by the process going forward, which is what the United States represented in this case, and what's the most recent OFAC order, and the letter that's been submitted to the court reaffirms, if those things are right, they can't be undone by an appeal at the end of the process. And so, for that reason, I think we do fit within the collateral order doctrine, even given what is admittedly a more ambiguous situation than it was when Judge Stark first came to office. You're making OFAC-type arguments in your objections to the special master's proposal, correct, in the district court? Yes. So why doesn't that show a substantial overlap between your appeal to the sale procedures order and the issues still pending before the district court? Well, Judge Porter, that's why I said earlier I think the case has gotten more complicated since Judge Stark's initial ruling. We read that ruling as a ruling that you could go forward with respect to a whole host of matters. That, as it's played out, and I think in significant measure because of the concern that the special master has, that what the special master's being asked to do might violate the OFAC regulations, that that process has taken a turn, the proceedings in the district court have taken a turn that, frankly, we hadn't anticipated at the outset. So that's why the variation here. And when you say it's taking a turn, you're saying that now that you see how the order is being brought to life, it's demonstrating that all that order did was say let's make a plan, and now you're seeing there's lots of things that come into that plan. We're not quite ready to go that far, Your Honor, in that it didn't just say let's make a plan. They pointed a special master. The special master's being paid. They're experts. The experts are being paid. All that process is going forward, and that process is inflicting, we think, the harms that we've identified to the legitimacy of the Guaido government in the eyes of the people of Venezuela because the Maduro government is able to use that as a propaganda tool to say, look, they can't even protect the crown jewels of this country. And those harms are occurring. But I'm just trying to be clear with the court that we do think the way the proceedings have evolved in the district court have made this issue less, made this issue murkier than we thought it was when we filed the appeal. Do you see the order that's on appeal here as requiring a contingent transfer, or is that something to be decided in the final sale procedure order? We read it as requiring steps towards a contingent transfer, as opposed to a contingent transfer itself. That depends ultimately on the setting up the auction and all that. But we do read it as requiring steps towards a contingent transfer. The whole point of it is to move the process towards the auction. All right. We'll get back on rebuttal. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning. I am Miguel Estrada on behalf of the appellee, and I will address some of the issues that were raised by my friend, Mr. Verrilli. I will start with the proposition that you don't need to parse through all 19th century cases to understand the basic rule that is the rule everywhere, that a refusal to vacate an attachment that has already been entered and affirmed by this court is an interlocutory order that is not appealable. There is an en banc ruling from this court in the State versus Pierce, and there is a more recent case by Judge Becker, Petroleum Mexicanos, which was cited by the district judge in this case. How did you get around our colleagues, our other panel members' language from 2019, where the court said the order granting the writ of attachment was deemed a final order because there was nothing left to do but execute? Well, I think that actually helps us in the sense that that is the appeal from the granting of the attachment, which under existing law would be an appealable event, but they already had that appeal. That actually goes to the next point I was going to make, that in the contemplation of the Venezuela parties, what had happened in the initial phase of this case was a tentative entry of a writ of attachment, and that is just not true. The attachment was entered full stop and was affirmed in the merits. This court considered its jurisdiction on the immunity question under the collateral order doctrine and separately over the correctness of the attachment under the final judgment rule. My question to you is, are you distinguishing an order granting a writ that is different than an order denying a motion to quash that writ? Yes, Your Honor. Is there a basis to do that? Because there is Third Circuit law that discusses that both are the same. One of your questions that was addressed had to do with the undeveloped nature of the footnote in which they say that the quashing aspect of this may be appealable under the collateral order doctrine. And interestingly, there was a Supreme Court case on this question. It's called Swift and Company versus Compañía Colombiana del Caribe, 1950. And it was one of the leading cases that was discussed in this court's en banc opinion in the state versus peers. And in that case, in Swift and Company, the Supreme Court made exactly that point. When you grant or vacate an existing attachment, you're actually interfering with something that has already happened in the real world. If you refuse to disturb an attachment that already exists, that is reigning, that nothing has happened in reality. So is your position then that the order that granted the writ of attachment affected rights and liabilities, but the order denying the motion to quash didn't change anything? It sort of kept the status quo? It kept the status quo, exactly. You're absolutely right. And they had an appeal from the grant of the attachment, which this court entertained under the final judgment rule and affirmed. And having entertained that appeal, Venezuela, ably represented by my opponent, went to the Supreme Court and was very explicitly that they wanted to come to the Supreme Court to review the important jurisdictional and liability issues that had been decided. Mr. Estrada, in the District Court's 2018 ruling, they quoted your letter brief where you said the PDVSA may, of course, seek to challenge the writ on non-jurisdictional grounds by a motion to quash brought after the writ has issued and before the court allows the execution process to commence. Doesn't that statement show that it was proper and expected for Venezuela to move to quash? I am very glad that you asked me that question because that reels with a very important confusion that has been obfuscated by the Venezuela parties. It is true that we came into District Court and essentially said practice in Delaware is that you can issue these things almost on an ex parte basis subject to motion to quash. And therefore, you can do that later. So you can find statements by us saying that. It was an offer that was not accepted by the Venezuela parties. You can look at the whole course of the litigation and not only did they move to dismissing jurisdictional grounds, like they say now, but they filed an opposition supported by numerous affidavits and expert declarations saying that we are not liable on the attachment. You should rule for us. Following the conclusion of that proceeding, and this is an important chronology, August 9th, 2018, the District Court entered an order ruling for us on the immunity and attachment questions, but very importantly saying I will not issue the motion, the writ of attachment right now, because I want to hear from the parties on next steps. In particular, will Venezuela be submitting additional evidence? Will Venezuela be filing a motion to quash? And I want a joint report from the parties in seven days. And that you can find at the very end of Volume 2 of the Joint Appendix. We did file a joint report that is not in the Joint Appendix, but is in the docket of the District Court, is docket entry 86, in which we took the position at page 5 of that filing that Venezuela had no motion to quash because it had litigated the attachment on the merits. And it could not come back to say that it was not the alter ego of PDVSA because the question had been fully litigated on the merits. Now, it was a joint report to the court. Venezuela had the opportunity to respond and disagree. And all Venezuela did in that report, this was August 16th, 2018, before the first appeal to this court, was to say we have filed a notice of appeal. That's it. August 23rd, having heard from Venezuela that they did not consider themselves to be any longer in front of the District Court, the District Court issues an order saying Venezuela, you're incorrect. I have continuing jurisdiction to enforce the order I issued on August 9th. And you are, of course, free to file a motion to stay under Rule 62. I'm giving you seven days to file any motion you may have and any other party, any motion that they may have. This is August 23rd. Seven days from the service of the writ. And I am directing that the writ be served. Writ was served the next day, August 24th. Venezuela filed a single motion. It was a motion for a stay. It was not a motion to quash. And in that motion, it acknowledged, A, that the District Court had ruled on the immunity question, and, B, in the second sentence in the paragraph, it had also ruled on the alter ego liability question. But didn't the District Court also have in its opinion some language that suggested that there could be more challenges to the writ? Well, I mean, the District Court has always been very solicitous of the proposition that there may be other parties who would come in. And the two orders that I mentioned, both August 18th and August 23rd, invited both Venezuela and any other party that may have something to say in the circumstances. That does not mean that Venezuela gets to litigate endlessly the same issue, whether it is an alter ego on the alternative versions of a legal system. Not only is that the case, but in the course of the litigation on the original writ, the very contention that is being urged today, you know, the notion that Delaware law has application here, was front and center in the context of the scope of Rule 69. We understand that that's their position. Should we have jurisdiction, they want us to weigh in on whether Delaware law should have been considered, was considered, whether law of the case applies. But we, as I mentioned to your adversary when he began, our real first milestone we need to achieve is the power to hear. Just for the completeness of the record, our position and their position at the time, and this is joint appendix page 144, counsel for PDVSA is asked specifically, whether Delaware law has any relevance to this, and he says no. And so should we ever get to the merits, that would be important. But the fundamental point is that if we get to the merits question, as the initial panel did, the sole issue was alter ego, and it was governed by federal law anyway. If I could address the practical finality. If we could stay on the missile intersection. Let's say the district court enters a final sales procedure order adopting the recommendations of the special master. In your view, would that be a final order? I want to know when you think the order would finally be final. There will be a final order. I mean, I think Venezuela will have an opportunity in a final sales order to appeal both these quash contentions, whatever the limited merit, and anything that is actually tied up to the sale, including the rough up arguments. I am not sure that the next order that we'll issue is such an order for the following reasons. On November 8th, we had a full day of hearings in front of the district court to consider a proposal by the special master for a sales order, but it's a sales process order. And that order, even if accepted by the district court, and with all of the objections being levied having been overruled, will still remain a roadmap for how to conduct a sale in the next following months. So in our view, it's not really what would be necessary to give rise to an appeal that, in the words of Keatland, leaves nothing for the court to execute. I think you would have to go through the order and, in effect, get to the point where a successful bidder has been selected and approved by the court, but a sale has not been completed. That is to say, there is a proposed purchaser, but no sale yet. But you can't take that next step until you get an OFAC sign-off. Correct. But at that point, the order, the work of the district court would be sufficiently completed that it would confer appellate jurisdiction on this court. If OFAC has not acted, this court might entertain the appeal because it has appellate jurisdiction and consider that the merits are not ripe, which would be a different issue. But that would be a different objection. Why wouldn't the next order be final? What judicial action would still be left to do, not administrative or ministerial, but judicial action would still be left to do after the next order? Because the proposed order contemplates that the special master will engage in a process of hiring experts and conducting diligence and conducting an auction. And in each of those steps is acting as an agent for the court. So, therefore, each of those steps can be challenged and produce a ruling that, in effect, would be interlocutory. So if you map out how the process would work out, each time that the special master acts in a way that Venezuela does not agree with, Venezuela would have the opportunity to go to Judge Stark and complain about the special master conduct and elicit a ruling. And if you contemplate a world in which the order that will next issue will produce a number of many disputes leading to an ultimate sale, it is clear that all of those rulings would be interlocutory toward a final conclusion of something. And, therefore, the roadmap that will issue next would not possibly be a final order. And so I don't deny that in some circumstances there may be a sales order that is simple enough, something that is bare bones that says sell this and we're done. As it happens, the order being contemplated is a process that involves due diligence, looking for buyers, the possibility of a stocking horse process, the court being involved in selecting a bidder. And to the extent that each of those posts in the road will be an occasion for a potential dispute that will go to Judge Stark and produce a ruling, it's clear that each of those will be interlocutory, and, therefore, there will be something yet to be done. And, therefore, it does not meet the definition of finality. If I could get back to the invocation of the doctrine of practical finality, I think it's important to recognize that all finality is practical. There is no exception of practical finality. When the Supreme Court decided Coyne versus Beneficial in 1947, what it said was we take a practical conception of finality. And since then in digital equipment, you know, the court has made very clear that the collateral order doctrine is not an exception to the finality requirement, which, of course, is statutory, but a practical construction of it. Having said that, this is not the court order doctrine that anything goes. Anything that might be practical and that appeals to the convenience of a litigant, therefore, becomes appealable. Couldn't these remaining steps be considered ministerial? Not in the sense that with each of them, Venezuela will contend that it affects its rights and liabilities. Now, some of those contentions may be insubstantial on the merits. To take one that was events to date, for example, Venezuela keeps complaining that the process is set up to depress, you know, the value of the asset so that it will get less. Now, it takes what people back in my hometown of New York used to call chutzpah to actually say that, because, of course, Venezuela is an obstinate debtor whose judgment has been affirmed many times. This is a collection action that is necessary because they refuse to pay, even though they have the assets. And if there is a depression in the value of the sale because they're fighting tooth and nail, it is a harm that is entirely self-inflicted. They could pay the judgment. Give us an example of a few issues that are pending right now that still require judicial, not ministerial, attention. Well, sure. We had a full-day hearing in federal district court on November 8th with respect to the proposal that the special master has fashioned for how the sales process will go on. And we submitted objections as to when it should get going. Venezuela submitted an objection, including one in which they purport to disqualify, you know, the master on the basis of the judicial disqualification statute, which I would think is a real issue that remains undecided. Later on, there will be opportunities for the special master to require the parties to produce information and compel them to produce information in the context of the due diligence and, in effect, act for the court in a coercive manner with the possibility of taking an appeal to the district court. And so long as the special master is acting as an agent for the district court, in effect, commanding action by the parties subject to supervision by the district court, that the discretion that the master is exercising is always something that is not ministerial on the part of the court because you can always take, you know, the equivalent of an appeal to Judge Stark. And until the process is over, it is inevitable that parties will believe that their interests are not being served and that they need to have recourse to the district court to get their interests looked into. Is the issue about deference to OFAC's FAQ, is that still a live issue? In our view, the district court has settled that issue for us in the January 2021 order. That's the issue that is reportedly being attempted to appeal. It's a question of under the Kaiser case, you know, those, you know, FAQ 808 or 809 are the ones that are in dispute. In our view, only the regulations are controlling. And in our view, this is the merits now, what is prohibited is the ultimate sale, period, full stop. We have rival interpretations of the OFAC letter as to whether it supports our view or their view. And again, that's the merits. If I could get back to the question of the practical finality in this court's cases, as I said earlier, it is not a – may I? We're going to give you, like, just another minute before we hear from you. Obviously, we have a few other folks who are going to hear tonight. Let me make two points. The sharp case that they cite constantly made clear that, you know, the practical finality in the post-judgment era comes up because, of course, if the final judgment is the main event and if it's over, something that arises may not be part of a process that's leading someplace. That's not through here. There's a sales process that is ongoing. And it said that the issue that has to be decided is one that affects rights and liabilities, not previously resolved by the adjudication of the merits. Of course, the attachment was previously solved here. It's just a question of the status quo. The case that it cited, Orthrup, also pointed out that an essential ingredient of this practical assessment was that if the order is found non-final, there doesn't appear to be an avenue where further proceedings will make it final so that the person will never get review. Again, that's not through here because there's an ongoing sales process. So even on this practical conception, of course, there are limits, as there must be because there is a statutory requirement of finality. Thank you, Your Honor. Thank you very much. Thank you, Your Honor. It's a lot to clear up here, but let me start with a big point. Eighty percent of my friend on the other side's argument was about the merits. And that is because he's trying to portray the denial of the motion to quash as a purely ministerial order on the theory that the substance of the attachment was already decided on the merits. That's what the whole issue is on the merits. That's the collateral estoppel argument, the forfeiture argument. That's the whole thing that we're opposing here. So what that points up, essentially, is that this is a final. You can't decide what he claims is the basis for finding this to be non-final without addressing the very merits of the issue. I mean, that's just as clear as could be. And I think it was the way he finished, my friend finished, with the Sharp Properties case, it shows you the same thing. I mean, Sharp Properties was actually, if you look at it just like this case, that was about not a writ of attachment under Rule 69, but a writ of assistance under Rule 70. And what happened there was that the challenger, you know, essentially moved to quash the writ of assistance. If your argument is correct, doesn't that make your better argument on appellate jurisdiction a collateral order, doctor? Well, I think collateral order applies. But I think that Sharp conceptualized it as it being a sufficiently final judgment, and it did so based on, of course, the Supreme Court's 19th century decision in Blossom. I do want to point out a few things. You know, I realize that they were kind of straddling the merits and jurisdiction here, but they're really quite important. You know, Mr. Estrada said that Judge Stark required us to come forward, and we didn't, and therefore there was a forfeiture. Of course, it didn't occur to them to make that argument in the district court. Judge Stark came up with that argument himself, so that tells you something, I think, about what they really think about that argument. But beyond that, I do urge the Court to look at page 249 of the Joint Appendix, which my friend Mr. Estrada points you to. Here's what Judge Stark asked the Venezuelan parties to do. Will Venezuela, PDVSA, or any other entity appear and seek to supplement the factual record already developed in this litigation, and if so, will such entity attempt to argue that this additional evidence materially alters the Court's findings? In other words, this is when the Guaido government has come into being, and what Judge Stark is saying, well, if those changed circumstances are going to change the alter ego determination, tell me. That's not about the substantive challenge to the writ the judge said in his order on August 9th. You can bring those later, and that's what we did. So that's why I say this is all bound up, it seems to me. Their whole argument about this not being a final order is bound up with the merits, and therefore I don't think you can get to resolution of it without deciding the merits. And fundamentally, I'll just say, here's what we're really concerned about here, that, you know, they've made their argument, but we think it's clear as can be that we have never had a resolution on the merits of the fundamental question of whether this attachment is lawful in the absence of proof of fraud, and in fact, Judge Stark found no proof of fraud. That's never been adjudicated in this case. It's a central issue, and the related central issue is whether, as my friend on the other side says, federal common law governs that issue under Rule 69, or as we say, and as Rule 69 says, state law governs that issue. It's never been decided in this case. Now, there's a billion dollars at stake here. There are important sovereign interests at stake. There are important U.S. governmental interests at stake. This is the central issue, and it's never been decided. And the idea that this can go forward all the way to the end, that there can be a sale without that fundamental issue ever being decided, because you can be sure my friends on the other side are going to say when this is all over, well, that was decided before when this case went to the Third Circuit before. I think that's what they argued in the briefs. But it isn't. It's just not correct. But I'm just saying step back and think about the consequences of that. This is incredibly significant, and it's going to be decided without the fundamental legal issue ever having been addressed, and that can't be right. Thank you. We take our silence as a position whether that's accurate or not, because we did ask to talk about appellate jurisdiction, but we understand the passion we have on that subject, and it was clear from your briefing as well. Thank you. If my colleagues have no further questions. None. Hearing none, it's a pleasure having you both in front of us. The Court will take the matter under advisement.